23-5589 Robert Greer v. Carol Hagen 15 minutes per side Mr. Norgaard, you may proceed for the appellants Good morning Thank you, Your Honors. May it please the Court. My name is Matthew Norgaard, and I represent the plaintiff appellants in this matter. To address the questions posed by this Court's June 7th order, the District Court retained jurisdiction to hear appellants' November 22nd motion because the premature notice of appeal, taken from a deficient joint stipulation of dismissal, did not divest the District Court of Jurisdiction. Further, the premature notice of appeal relates forward to the Court's order dismissing the final party and remaining claim. However, it is limited to the orders identified in that premature notice of appeal. Here, the two motions to dismiss and the denial of the leave to amend. Turning to the merits, we are here to reverse the District Court's harsh Are you going to argue the jurisdictional points? I'm not sure how you're proceeding. I have some questions about that. You contend that we have jurisdiction. It's the other side that's contesting jurisdiction. Yes, Your Honor. So maybe a rebuttal might be better? I'm going to ask some questions now. Absolutely, Your Honor. So why did the District Court have the ability to rule on the dismissal issue? As is clear in Griggs v. Provident Consumer Discount, and this Court's opinion in Cockrell v. Pringle, District Court retains jurisdiction to aid an appellate jurisdiction in aid and appeal. And here, the post-1979 amendments to the federal rules made it clear that courts may entertain any type of motion and enter orders following the filing of a notice of appeal that is clearly taken from a non-appealable order. So it can aid, but it can't alter? No, it cannot. All right. So why is this aiding as opposed to altering? Because the order that you're appealing from didn't dismiss this party, and then you were able to work things in the District Court where the party was dismissed. That, in some ways, feels like an alteration. Aiding because the District Court was only entering final judgment to the remaining party in claim. Here, it's clear under Gillis and Adelson and Bonner v. Perry that when the notice of appeal is entered after a District Court dismisses some, but not all, of the plaintiffs in claims, they retain jurisdiction to enter an order dismissing those remaining claims and defendants in order to aid the appellate jurisdiction. And you cited the Cochran case? Cochran v. Burkle, as well as Gillis v. U.S. Department of Health and Human Services and Bonner v. Perry. Bonner v. Perry specifically relied on this court's ruling, and Gillis v. U.S. Department of Health and Human Services. So Cochran talks about appeals that were obviously frivolous, and I wouldn't put this appeal in that category? In other words, you didn't think it was frivolous when you started? No, Your Honor. It was only pointed out to us in the appellee's response that our joint stipulation was deficient. However, upon a close reading of the rules, it was clear that that joint stipulation was not effective. So you filed a frivolous appeal? We filed a premature notice of appeal. Well, it's got to be frivolous to fall under the case law. I agree with you it's premature, but it's applying to that line of cases. It has to be frivolous. My understanding of Gillis and Bonner v. Perry is that it doesn't need to be frivolous. It just needs to be taken from a non-appealable order. And in order to preserve judicial resources and economy, the district court retains jurisdiction to enter an order making that judgment final. Assuming Your Honor has no further questions about jurisdiction, turning to the merits, we are here to reverse the district court's harsh application of Rule 9b, wind factor, because it contradicted every other district court's lenient application of Rule 9b when a defendant knowingly sold a mislabeled product over a long period of time or the business's entire course of conduct is implicated. The district court erred, requiring appellants plead exact dates that the appellants purchased the honey or that they informed the retail appellees about the adulteration. Because the allegations at the strange appellee's misrepresentations occurred at all relevant times, the class member purchased its mislabeled honey. What does all relevant times mean? I mean, without a date, I mean... That would cover the entire limitations period triggered by the filing of the complaint in June 2020. You don't say that, though, do you? I mean, if the limitation period is three years, you don't say that the plaintiffs purchased the honey from, you know, 2018 to 2021, or whatever that three-year period is. You just say relevant times, and we don't... I mean, to me, that's about as unspecific as you can get. Appellants would contend that it puts the strange appellees on notice. Well, they don't know what the relevant time is either, though, do they? It would be the entire statute of limitations period for the county. You don't say that in the complaint. Maybe if you did, you'd have a better position. The other problem I have is the allegations are all conclusions. It's all conclusory. And even under Tromley, you've got to plead facts that plausibly allege the cause of action. And then under the rules, when you plead fraud, you've got to... It's a very high pleading standard of specificity. Your Honor is correct. However, every other district court, when faced with the question of misrepresentation on product labels that occur over a long period of time, ruled that exact date, if the allegations were not given, allegations can satisfy the Rule 9b and put the defendant on notice of the time period it occurred. And in here, our case, that relevant time period is the entire limitations period for the fraudulent misrepresentation count, as well as the limitations period for each Consumer Fraud Law Act. All right. I mean, one of the allegations is the honey is not raw because it's been cooked, but there's different temperatures on the cooking of the honey and different degrees. And we don't know if it was cooked the same all three years or not. It was overcooked a few times or all the time. That kind of stuff is not really specific, is it? I would think, Your Honor, that the allegations in the complaint in paragraphs 19 to 31, as well as the exhibit C and D attached to the response to the motion to dismiss strange appellees, implicated the strange honey defendants' entire course of business because they had a systematic practice of excessively heating the honey, adding corn syrup, and importing the honey from outside of Tennessee. And while the plaintiffs did not plead that their precise purchase was the honey tested, when it's a systematic practice and it implicates the entire business's course of conduct, that undermines the 100% Tennessee raw label on all honey sold during the limitations period by the strange appellees. Similarly, the allegation against the retail appellees that they continuously sold mislabeled honey after the president of a wholesale company told the retail appellees about the adulteration put the retail appellees on notice that their misrepresentations occurred over the time period that they knowingly sold the mislabeled products during the limitations period triggered by the filing of the complaint in June 2020 through the president or until they stopped selling the honey for count one. Your Honor, I see your time is getting short. Do you want to address the motion to amend the complaint? And I'm just curious to hear from you why you think the allegations that are set forth in the proposed amended complaint address some of the deficiencies that are the court found in the initial complaint. I'm out of time. May I respond?  Please do. The amended complaint added purchase dates for four of the six plaintiffs and that provided the necessary context that I believe maybe Judge Griffin was saying was missing from the original complaint. By adding dates that the plaintiffs purchased the honey puts the strange retail defendants on notice that those misrepresentations occurred in 2018, 2019, 2020, and 2022 when the plaintiffs purchased the honey. Can I ask you this one initial question? It was somewhere around two years between the filing of the complaint and the meeting of the complaint. That's a pretty sizable delay. It's just not clear to me what reasoning would support that delay and why that would not be an undue delay. Appellants sought leave to amend only 16 days after the court dismissed the trans-appellees. There was no motion to amend before the dismissal. No, Your Honor. Isn't that important? They say a complaint is insufficient and you defend against their motion to dismiss, but you don't at that time make a motion to amend, which is the customary practice. Judge, please deny the motion to dismiss because I have a motion to amend. I'm going to correct the deficiencies. You waited until after the order of dismissal, is that right? Yes, Your Honor. Why did you do that? Prior to the dismissal order, the defendant below Carol Hankin answered the complaint and appellants contend that by answering the complaint, she conceded that there were no deficiencies related to her and that the allegations of the complaint were sufficient pleading-wise for that plaintiff and if they were sufficient for defending Carol Hankin and the allegations and the complaint are the same for each of those three defendants. You thought you could rely on a co-defendant's concession as to these defendants? Not precisely, Your Honor, just that it indicated that the complaint was sufficient and we would survive the motion to dismiss. Okay, that was kind of a risk. Our standard of review for denial of motion to amend is an abuse of discretion, right? For undue prejudice, yes, Your Honor. When it's for futility, it is de novo review. Here, the district court entered the order for both futility and undue prejudice. For the undue prejudice claim, appellants shouldn't be punished for any delay attributable to a reassignment of judge that occurred after fully briefing the motion to dismiss. As I mentioned, defendant Carol Hankin answered the complaint. Discovery had not yet commenced due to a joint stay signed by the parties such that significant additional costs will not be incurred and none of the cases cited by the appellees concern dismissal pursuant to Rule 9b where courts in this circuit routinely find that the amendment after dismissal under Rule 9b should be granted and so that courts may address claims on their merits. Any further questions at this time? All right, thank you. You'll have your five-minute rebuttal. Thank you. Good morning. Good morning. May it please the court, I'm Gordon Ball of the Tennessee Bar. And we believe that this court has never had jurisdiction in this case. We believe that document number 68 and 69, 68 being the Rule 41 document, that they both, 69 being the Notice of Appeal, were nullities. And the district court has always had jurisdiction of this case. It goes back to the district court from this court. The district court held that there was an appeal from a non-appellable order and then put down a final judgment from which there's been no appeal. And we believe that there being a nullity, both 68 and 69 being a nullity, that that requires a new Notice of Appeal, which has never been done. And you have 30 days, as the court knows, to file a Notice of Appeal. How do you distinguish the Bonner case? I distinguish the Bonner case as being, this court knows much better than I, that you get a lot of appeals from inmates and unskilled litigants. And I distinguish the Bonner case differently. The Bonner case was from an unskilled litigant, the appellant. We don't have that situation here. Was that the basis of the holding in Bonner? I mean, I didn't think so. I mean, I thought we had like a broad holding that the district court entered an order dismissing the remaining defendants. The Notice of Appeal was premature. However, the initial grant, partial summary judgment in favor of DOC, became reviewable as a final judgment at that time. At that time, in our case, the court granted our motion to dismiss under 9B. And then months later, the appellant in this case manufactured a final order under Rule 41. So I think that distinguishes our case. Okay, you're talking about the stipulation that wasn't signed by all the parties? That's right. Okay, but then after that, there was a motion, was there not, to dismiss the case? That was granted by an order to court as opposed to by a stipulation. That's right. So that disposed of all the claims to all the parties. And the only question is whether the Notice of Appeal, which was filed earlier, premature, is applicable forward of the final dismissal of all the parties. Isn't the question whether the district court had jurisdiction to make that change? That's what I understood the issue to be. I think the district court had jurisdiction to make that change.  Because I don't think that the, what I'm saying is that the attempted appeal and the attempted Notice of Appeal was a nullity. And I think the district court didn't, when it went back to the district court, the district court said this was an order from a non-appealable order. And she didn't say, she goes forward. Because she thought the order was frivolous under the, not the Bonner case, but the other case. The other, Gillis case. Cochran case. Cochran case. She cited the Cochran case.  But that's only where it's like a clearly frivolous appeal. Right. So in that case, there was an appeal from a denial of some budget, whether you get a jury or not. And the district court had said that's not appealable. So that was pretty frivolous. This case, it seems a little different in terms of closer call. We're all debating it. Right. It is. But what I'm saying, our position is that when she put down the final order, and that that required a new Notice of Appeal be filed, that's our position. Because the other ones, 68 and 69, she held were non-appealable orders. And that requires a new Notice of Appeal to be filed. And that was not done. Okay. On the argument itself, aside from the jurisdictional issues, the motion to dismiss, we filed a motion to dismiss on July 3rd, 2020. The plan's response was filed on July 31st, 2020. And the order of dismissal was entered August 18th, 2022. As the court has pointed out, there was no motion to amend ever filed during that period of time. The motion to amend was denied on March 28th, 2023. The plaintiffs had never filed anything, a motion to amend or anything, until after the district court dismissed the case. A period of almost two years. I think the jurisprudence in the Sixth Circuit is you're basically not entitled to an advisory opinion. And the court could have dismissed it just based on that. But she didn't. She actually delved into the complaint, the amended complaint, and ruled based on futility and prejudice that the case should be dismissed under 9B. And as your honors have pointed out, and she pointed out, that the amended complaint that they offered does not identify particular dates that certain plaintiffs purchased Strange Honey. I thought the essence of their complaint was totally conclusionary. As this court, Judge Griffin mentioned earlier, the whole thing about the complaint was they bought the honey and that's all they knew. That there was testing of the honey, but there was never any times given when the honey was tested, where it was tested, who tested it. There was nothing given like that. Well, he said in oral argument today that this is the practice throughout the limitations period that it's not isolated, but it was an ongoing practice of Strange Honey to, I guess, to cook it above the temperature so it's not raw, to add syrup to it, to get honey from Vietnam or someplace else. Are those allegations in the complaint with specificity as required? I don't know if that allegation is even in the complaint. I'm not sure it is. I'm not sure there are allegations in the original complaint either. But 9B sets a high standard. When you plead fraud, and this court knows, and I'm not saying anything you don't already know, but when you plead fraud, you have to be very specific. And this complaint never came close. One of the things that is sort of as an aside, this case was filed before in 2019. Same case. And I think we were the only defendants in the first case. We filed a motion to dismiss under 9B, and while it was pending, they wanted to dismiss the complaint, and we agreed, thinking, you know, that was it. They go away. And then they refiled it. So this is not the first time they've had a shot at filing this complaint. But that's ‑‑ I have a minute and some left. I'm done unless you want to hear anything else. Any further questions for Mr. Ball? All right. Thank you. Thank you, Mr. Ball. Appreciate your argument. Good morning. Good morning, Your Honors. May it please the Court, I represent Mary Moffitt from the Knoxville Bar. I represent the retail appellees in this case, KVAP Food Stores and Ingalls, which are both grocery store chains. I'll repeat what my colleagues have argued, or I'll try not to, Your Honors, in the interest of time, but just very briefly, we were granted a 12B6 motion to dismiss by the Court. Sixty-one days later, 61 days after that order, granting our 12B6 motion on the 9B issue, 61 days later, a motion to amend was filed. That proposed amended complaint still had 9B issues. And the Court, on March 28, 2023, the District Court entered an order denying that motion to amend. I will tell Your Honors that I have, I'll confess, that I have a little bit of a concern about referring to the June 16, 2023 notice of amendment as a premature notice. I had a little angst with referring to it as premature. Because it was 80 days after that March 28 order denying the motion to amend. I realize that was not a final order. I understand that's the distinction and that's the reason and the justification for calling it a premature notice. I understand that part. But the order from which the appellants wanted to appeal was 80 days prior. The May 19, 2023 stipulation, docket number 68, is not an appealable order. It's not signed by all parties. And for the record, I want to make certain everybody understands, I was never asked to sign that. There are several places in the appellant briefing where they accused me of refusing to sign it. I was never asked to sign docket number 68. I was not advised of it prior to it being filed. I learned about it when the notice of appeal was filed. Even if all parties had signed it, Your Honors, we still need an order or a judgment from which to reasonably believe that the notice of appeal would apply. There are two cases that the appellants rely on for their appeal. One is Innovation Ventures, which is cited in the appellant's reply brief with this court at footnote one. And the court, the appellant at that point says, A properly executed stipulation of dismissal with prejudice under 41A12 is a final appealable order, and they cite Innovation Ventures. That is not what Innovation Ventures held. If you go back behind Innovation Ventures to the district court, Judge Terrence Bird from the Eastern District of Michigan entered an order pursuant to that stipulation. That's the order and judgment from which that case was appealed. Race, way, property versus enterprise. Can I say something? I didn't quite follow everything that you're getting at, but the bottom line, I think the notice of appeal is premature. Or improper.  Sorry?  Untimely. That's okay. I don't want to cause any more angst. And then did the district court correct the problem? Could the district court correct the problem? Yes, and I apologize to the court. You asked us to cover the jurisdiction issues. I don't think Judge Kreitzer corrected the notice of appeal. I think with respect to question one, did District Judge Kreitzer have jurisdiction when she entered the January 8th, 2024 order? I believe the answer to that question is yes, she did. For the reasons really that Mr. Ball just argued, that the notice of appeal was a nullity. Jurisdiction never left the Eastern District of Tennessee, in my view. Now that we have the January 8th judgment and final order, does that more or less rescue the notice of appeal of June 16th? I do not believe it does under Bonner. If you look at Bonner, when I looked at Bonner, Bonner is not only factually different, but it illustrates why the notice of appeal in this case is still a nullity. In Bonner, the notice of appeal was filed on April 21st, 2008. The order from which she attempted to appeal was entered on March 24th, less than 30 days after she filed, or before. If you go back 30 days from her April 21st notice of appeal, that order, or the judgment rather, was docketed within that 30-day period. The Bonner, and the Keohane decision, the Keohane v. Svoboda. In Bonner, we talked about the things that happened in the appeals court. Did we say anything about whether the district court properly had jurisdiction to enter its revised order in that case? I don't think we did. I don't think we did. I don't recall that in the Bonner case. The error that was fixing there was a pretty small one. Exactly. Also, in the Bonner decision, I think Bonner is illustrative. I think it's great to cite that in the order that we got from the court. I appreciated going through it. But the court in Bonner took some time to focus on the Supreme Court decision in first-tier mortgage. And I think the quote that this court made from that Supreme Court decision is so important. And the court, if I may quote, it says on page 8 of what got printed. I think it's 428 from the decision. The court noted that Rule 4A2 was intended to protect the unskilled litigant who files a notice of appeal from a decision that he reasonably but mistakenly believes to be a final judgment. We don't have that here. And that's this court quoting first-tier's Supreme Court decision. We don't have that. This court goes on to say, the court stressed that A2 does not permit a notice of appeal under certain circumstances in the interest of time. But this court goes on to say, but instead, quote, quoting first-tier's, quote, Rule 4A2 permits a notice of appeal from a non-final decision to operate as a notice of appeal from a final judgment only, only when a district court announces a decision that would be appropriate if immediately followed by the entry of judgment. That's in the Bonner case, quoting from Supreme Court. That is not this case. That is not what we have here. We have a notice of appeal filed on June the 16th, seeking to appeal an order 80 days ago. It was not reasonable for the appellant to believe that. It is a manufactured effort to get to this court, and I don't think it is something this court should conduct. I appreciate your time on the issue. We have skilled litigants, so that's not an issue. We have a skilled district court judge. Just to complicate it, before you go, though, could you address briefly the merits? Your Honor, Judge Kreitzer's decision should be affirmed. The dates in the amended complaint, it is still deficient. I believe the motion to amend was untimely under Rule 15. The judge denied the motion to amend based on 9B. I respect that. As a litigant, I don't believe the proposed amended complaint satisfied the 9B heightened pleading requirements. There are several deficiencies. For example, on docket number 54-1, which is page 306 of the court file, there is no date. Plaintiff Tucker Goodman bought strange honey at Harris Teeter's, which is owned by Ingalls & Boone, North Carolina, but there's no date. Plaintiff Amber Turner is a citizen and resident, purchased strange honey in Virginia. K-Bat Food Stores is located in Virginia. Virginia is a big state. We have stores all over Virginia. That's not specific enough. Those are just two narrow examples, Your Honor, to answer your question. The proposed amended complaint was still extremely deficient and failed to satisfy the heightened burden under Rule 9B, and so I think she was correct in denying the motion to amend. All right, thank you. Any further questions? Thank you, Your Honor. Mr. Nordhard, you have five minutes or both. Thank you, Your Honor. As the appellees admit, the notice of appeal was taken from a non-appealable order, and while Bonner does analyze the Supreme Court's case in first tier, it does that in order to determine whether or not first tier limited its holding in Gillis v. United States Health and Human Services. The Bonner court determined that Gillis was not limited in any way by first tier, and in Gillis we have the exact situation we have here, where at oral argument the appellants informed the court that the remaining claims and parties were dismissed by the district court, and that court followed every other circuit and held that a premature notice of appeal can invoke appellate jurisdiction if the district court enters final judgment prior to the appellate disposition. That's precisely what's happened here. Did Bonner say anything about whether the district court was proper in that case in amending its prior orders? The issue in my mind is really what's going on in the district court, less what's happening here and more what's going on, but what happened in the district court. I don't see it as amending the order. Appellants filed the joint stipulation. It was not signed by all parties. As Ms. Moffitt stated, we did not ask all parties to sign that joint stipulation. When it was pointed out to us that we had a non-appealable order and our appeal was taken from that joint stipulation, which would encompass the district court's prior orders, including the motions to dismiss and denial of leave to amend. When we realized that we had taken an appeal from a non-appealable order, we asked appellants to resolve the issue by signing a revised joint stipulation, which they refused. After refusing to sign a revised joint stipulation, we filed a motion with the district court. We asked this court to hold our appeal in abeyance while we sought the final order in the district court, and that court had jurisdiction to hear that motion. If this panel were to determine that the district court did not have jurisdiction to hear that motion, its final order entered on January 8th was void as laid out in Keyhane, and this case should be remanded back because we have a defendant and a claim that is still live in the district court. We're addressing the merits. Plaintiffs have always stated, and the allegations in the complaint made clear, that Strange Honey had the systematic practice of selling mislabeled honey products. That was their business model. At no point did they sell honey that complied with the statement on its label, and at every point after the retail appellees knew that the Strange appellees adulterated their honey, they continued to knowingly sell the mislabeled products to class members. Here, while not rule 9B does require heightened specificity, the when factor, when the misrepresentation occurred, is loosened if the misrepresentation occurred each time a plaintiff purchased a product over a four-year period or the applicable limitations period for each count. For those forgoing reasons, Your Honors, this court should reverse the district court's orders dismissing the retail and Strange appellant fees and reverse the order denying appellants' motion to leave to file their First Amendment complaint and remand for further proceedings. Thank you. Thank you for your argument, Counsel. Any further questions? No. All right. Case will be submitted.